# UNITED STATES DISTRICT COURT

for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| INFORMATION ASSOCIATED WITH THE | ) |
| GOOGLE ACCOUNTS | ) |
| MOHAMAD.SABRY.SOLIMAN@GMAIL.COM; | ) |
| NOMOREFEAR2025@GMAIL.COM; AND | ) |
| MSABRYFARAG@GMAIL.COM, THAT IS | ) |
| STORED AT PREMISES CONTROLLED BY | ) |
| GOOGLE LLC | ) |

Case No.  25-sw-00808-TPO

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the <u>Northern</u> District of <u>California</u> there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § § 249(a)(1) and (2) | Hate crime offenses involving actual or perceived race, religion, or national origin |

The application is based on these facts:

- ☒ Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Jessica Krueger*
_____
*Applicant's signature*

SA Jessica Krueger, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by <u>telephone</u>.

Date:  6/27/25
_____

**Timothy P. OHara** Digitally signed by Timothy P. OHara
Date: 2025.06.27 15:56:53 -06'00'
_____
*Judge's signature*

City and state:  Denver, CO
_____

Timothy P. O'Hara
United States Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with nomorefear2025@gmail.com ("Target Account #1"); Mohamad.sabry.soliman@gmail.com ("Target Account #2") and msabryfarag@gmail.com ("Target Account #3"), (collectively the "Target Accounts"), that are stored at premises owned, maintained, controlled, or operated by Google LLC a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.**     **Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on June 2 and June 3, 2025 (Google reference numbers 96050160, 95898848 and 96002374), Google is required to disclose to the government for each account or identifier listed in Attachment A the following information **May 1, 2024 to June 1, 2025**, unless otherwise indicated:

    a.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

        3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

        5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

        6.    Length of service (including start date and creation IP) and types of service utilized;

        7.    Means and source of payment (including any credit card or bank account number); and

8.    Change history.

b.    All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.    Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

d.    *Email Content.* All emails sent to or from, stored in draft form in, or otherwise associated with the Target Account, including all message content, attachments, and header information (specifically including the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email).

e.    *Search History.* All data concerning searches run by the user of the Target Account, including, but not limited to, the content, date, and time of the search.

f.    *Google+ Photos and Content.* All data concerning Google+ Photos, including all albums, photos, videos, and associated metadata for each file, as well as all Google+ posts, comments, profiles, contacts, and information relating to Google+ Circles associated with the Target Account.

g.    *Google Drive Content.* All files and folders in the Google Drive associated with the Target Account.

h.    *Google Voice.* All records, voicemails, text messages, and other data associated with Google Voice associated with the Target Account.

i.    *YouTube Content.* For any YouTube account associated with the Target Account, all subscriber information as well as copies of any videos and associated metadata and any YouTube comments or private messages.

j.    *Google Maps.* All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history.

k.      *Contacts.* Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history.

l.      *Address book information.* All address book, contact list, or similar information associated with the Target Account.

m.      *Subscriber and payment information.* All subscriber and payment information regarding the Target Account, including but not limited to name, username, address, telephone number, alternate email addresses, registration IP address, account creation date, account status, length of service, types of services utilized, means and source of payment, and payment history.

n.      *Linked accounts.* The account identifiers for all accounts linked to the Target Account, and subscriber records therefore as described in the preceding sub-paragraph, including but not limited to any account linked to the Target Account by registration IP address, "machine" or other cookie, alternate email address, or telephone number.

o.      *Transactional records.* All transactional records associated with the Target Account, including any IP logs or other records of session times and durations. *Customer correspondence.* All correspondence with the subscriber or others associated with the Target Account, including complaints, inquiries, or other contacts with support services and records of actions taken.

p.      *Preserved records.* Any preserved copies of any of the foregoing categories of records created in response to any preservation request(s) issued pursuant to 18 U.S.C. § 2703(f).

Google is hereby ordered to disclose the above information to the government within **14 days**

days of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 249(a)(1) and (2) (the "Subject Offenses") involving Mohammed Sabry SOLIMAN from May 1, 2024 to June 1, 2025, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

    a.  Records and information, including journals, writings, and papers, pertaining to the Subject Offenses and SOLIMAN's motive to commit the Subject Offenses, such as a bias against Jewish people or supporters of Israel or other bias against individuals based on their race, religion, or national origin;

    b.  Records and information pertaining to the purchase or attempted purchase of explosive devices or materials that can be used to make explosive devices;

    c.  Records and information pertaining to the existence, identity, and travel of any co-conspirators, as well as any co-conspirators' acts taken in furtherance of the crimes listed above;

    d.  Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

    e.  Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

    f.  Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

g.  The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

h.  The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the Subject Offenses, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

The government is further authorized to share the information obtained from this search (to include copies of digital media and social media applications) with any government agency investigating, or aiding in the investigation of, this case or related matters.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS MOHAMAD.SABRY.SOLIMAN@GMAIL.COM; NOMOREFEAR2025@GMAIL.COM; AND MSABRYFARAG@GMAIL.COM, THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No.  25-sw-00808-TPO<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Jessica Krueger, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with the Google accounts: nomorefear2025@gmail.com ("Target Account #1"); Mohamad.sabry.soliman@gmail.com ("Target Account #2") and msabryfarag@gmail.com ("Target Account #3"), (collectively the "Target Accounts"), that are stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

1

2.      I am a Special Agent with the FBI and have been since November 2009. I am involved in investigations of persons suspected of violations of Federal law in the State of Colorado and throughout the United States. I have gained experience conducting investigations through formal training and consultation with local, state, and federal law enforcement agencies as well as from law enforcement investigations themselves. I have assisted in multiple criminal investigations and participated in numerous search and arrest warrants related to such investigations.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Mohammed Sabry SOLIMAN has violated 18 U.S.C. § § 249(a)(1) and (2) (hate crime offenses involving actual or perceived race, religion, or national origin) ("Subject Offense").  Furthermore, there is probable cause to believe that evidence, contraband, fruits, and/or items pertaining to those violations will be found in the TARGET ACCOUNTS.   Further, I submit that this affidavit supports probable cause for a warrant to search those locations, which are further described in Attachments A, and to seize evidence, instrumentalities, contraband, and/or fruits of these crimes, as further described in Attachments B.

## JURISDICTION

5.      As discussed more fully below, acts or omissions in furtherance of the offenses under investigation have occurred within the District of Colorado.

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated. 2711(3)(A)(ii).

## STATUTORY AUTHORITY

7.     As relevant here, 18 U.S.C. § 249(a)(1) (hate crime offenses involving actual or perceived race, color, religion, or national origin) makes it a felony to "whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person."

8.     Under 18 U.S.C. § 249(a)(2), it is a felony when "whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability," in any circumstances in which, "in connection with the conduct. . ., the defendant employs a firearm, dangerous weapon, explosive or incendiary device, or other weapon that has traveled in interstate or foreign commerce."

## PROBABLE CAUSE

9.     According to a post on Facebook, an organization called "Run For Their Lives" organizes a weekly walk across locations in the United States as a way to call attention to Israeli hostages still being held in Gaza. As documented in the post, the organization walks in Boulder every Sunday and posted about a walk on Sunday, June 1, 2025, at 1:00 PM, at the corner of 8th and Pearl Street, Boulder, Colorado.

10.    On June 1, 2025, at approximately 1:30 p.m. MST, SOLIMAN threw two lit Molotov cocktails at individuals participating in a pro-Israel gathering near the Boulder Courthouse, located at 1303 Pearl St, Boulder, CO 80302. When he threw the Molotov cocktails, SOLIMAN yelled "Free Palestine!" and the Molotov cocktails ignited in the crowd of people, causing burn injuries to at least eight individuals.

11.    SOLIMAN was detained by local law enforcement. A black plastic container with a yellow top was found near where SOLIMAN was arrested. In the black plastic container were at least fourteen unlit Molotov cocktails, comprised of glass wine carafe bottles or Ball jars containing clear liquid and red rags hanging out of some of the bottles. Near the black plastic container was a backpack weed sprayer, potentially containing a flammable substance. The clear liquid in the glass bottles and weed sprayer were determined to be 87 octane gasoline, which was determined to contain xylene based on a field test.

12.    Based on my training and experience, both the wine carafe bottles and the gasoline used to make the Molotov cocktails are not manufactured within the District of Colorado and have traveled in interstate or foreign commerce.

13.    Law enforcement located a 2015 silver Toyota Prius, Colorado license plate CQAN01, registered to SOLIMAN and parked nearby on Spruce Street and 13th Street. Visible inside the car was red material consistent with the rags found in the black plastic container; a red gas container; and paperwork with the words, "Israel," "Palestine," and "USAID." The vehicle was subsequently moved to the FBI Denver facility.

14.    SOLIMAN was placed under arrest and a mirandized interview was conducted by local and federal law enforcement. During the interview, SOLIMAN stated that he researched on YouTube how to make Molotov Cocktails, purchased the ingredients to do so, and constructed

4

them. He traveled to Boulder, Colorado in his vehicle with the Molotov cocktails and threw two of the cocktails at individuals participating in a pro-Israel gathering. He also stated that he picked up gas at a gas station on the way to Boulder. He stated that he wanted to kill all Zionist people and wished they were all dead. SOLIMAN stated he would do it (conduct an attack) again. He specifically targeted the "Zionist Group" that had gathered in Boulder having learned about the group from an online search. SOLIMAN knew that they planned to meet today, Sunday, June 1 at 1pm. He arrived at approximately 12:55 p.m. and waited for them. Throughout the interview, SOLIMAN stated that he hated the Zionist group and did this because he hated this group and needed to stop them from taking over "our land," which he explained to be Palestine. He stated that he had been planning the attack for a year and was waiting until after his daughter graduated to conduct the attack. Based on his above statements, I believe SOLIMAN has been planning the above-described attack since at least May 1, 2024.

15.    In a video, which was posted on the social media platform X during the attack, an individual identified as SOLIMAN is seen shirtless, pacing back and forth while holding what appear to be Molotov cocktails, glass bottles containing clear liquid with a red rag hanging from the top of the bottle. He is captured on the video stating "how many children killed" then a few moments later "end Zionist."

16.    Based on my training, experience and research, I know that "Zionist" is a term describing an individual who believes in the establishment of a Jewish state and is supportive of the government of Israel.

17.    SOLIMAN stated that he brought a phone with him to Boulder and had the phone with him during the attack. A Motorola QS-50 with telephone number 1-719-437-3349 and IMEI

355881474527813 was recovered from the ground near where SOLIMAN was arrested and where the above-described black plastic container was located.

18.    Also during the interview, SOLIMAN stated that he resides at 2316 Washo Circle, Colorado Springs, Colorado with his wife and five children. He stated he left an iPhone at the house, hidden in a desk drawer, with messages to his family. He also stated that he left a journal inside his house.

19.    After his arrest, law enforcement officers arrived at SOLIMAN's residence in Colorado Springs and observed his wife arriving at the home. SOLIMAN's wife then went to the Colorado Springs Police Office. She brought with her an iPhone 14 that she identified to belong to SOLIMAN and be used by other members of their family. At the Colorado Springs Police Office the black iPhone 14 Plus with IMEI 353547790122850, was seized from SOLIMAN's wife.

20.    On June 2, 2025, a search warrant was signed by Magistrate Judge Timothy P. O'Hara authorizing the search of the Motorola QS-50 cellphone, which was recovered from the scene of the attack in Boulder, and a black iPhone 14 Plus, which was taken from SOLIMAN's wife at the Colorado Spring Police Department. 25-sw-00791-TPO.

21.    Pursuant to that search warrant, the FBI Rocky Mountain Regional Forensic Computer Laboratory ("RCFL") searched both devices and the analysis of the content of the devices is ongoing. A review of the extraction determined that the Motorola QS-50 cellphone is associated with Verizon, the phone number 719-437-3349, and the IMEI 355881474527813. A review of the extracted information identified nomorefear2025@gmail.com associated with this device ("Target Account #1").

22.    Verizon informed law enforcement that the phone number 719-678-1911 is registered to Ahmed Noreldeen with address 14638 Allegiance Drive, Colorado Springs, Colorado. On June 1, 2025, Noreldeen was interviewed by law enforcement and explained that that his is the cousin of SOLIMAN's wife; that Noreldeen has a family phone plan through Verizon; and that SOLIMAN is part of that plan. Noreldeen informed law enforcement that SOLIMAN's number on the plan is 719-678-1911 and SOLIMAN's email address is Mohamad.sabry.soliman@gmail.com ("Target Account #2"). Google provided information that Target Account #2 is associated with the subscriber name "Mohamad Soliman" with phone number 719-678-1911.

23.    A review of the extraction of the black iPhone 14 Plus cellphone is associated with Verizon, the phone number 719-678-111, and the IMEI 353547790122850. The extraction of the iPhone 14 Plus cellphone also showed an Apple ID and iCloud account associated with email address mohamad.sabry.soliman@gmail.com ("Target Account #2")

24.    During his mirandized interview with law enforcement, SOLIMAN provided that he worked as an Uber driver. Uber informed law enforcement that SOLIMAN is a driver for Uber. Records provided by Uber show that SOLIMAN's account is registered to Mohamed Sabry Soliman and associated with display name of Mohamed Soliman, Colorado Driver's License 17-227-7403, telephone number 1-719-437-3349, email address msabryfarag@gmail.com ("Target Account #3"), and date of birth December 15, 1979. Uber records showed that the SOLIMAN's Uber account was previously associated with telephone numbers 1-719-678-1911 and 1-719-678-5456 and that his account had a rideshare as recently as the morning of June 1, 2025.

25.    As noted above, SOLIMAN stated that he searched online to locate the "Run for Their Lives" event in Boulder, Colorado and searched YouTube for instructions on how to construct Molotov cocktails. He also traveled to multiple locations on the day of the attack to purchase the 87 Octane Gasoline used in the Molotov cocktails. There is probable cause to believe that SOLIMAN's internet activity contained in the three Target Accounts, including web, image, maps, news, video and YouTube searches as well as other activity outlined in attachment B, contain evidence relevant to the Subject Offense.

26.    Based on SOLIMAN's statement that (a) he had been planning an attack for over a year, (b) he specifically targeted the "Zionist Group" that had gathered in Boulder having learned about the group from an online search, (c) he researched how to make Molotov cocktails on YouTube, and (d) he purchased the ingredients to make the Molotov cocktails, there is probable cause to believe that evidence of the Subject Offense would be found in the information from the Target Accounts from May 1, 2024 through June 1, 2025.

27.    On June 2 and 3, 2025, preservation requests were served on Google for the Target Accounts.

28.    On June 4, 2025, a search warrant was signed by Magistrate Judge Timothy P. O'Hara authorizing the search of the Target Accounts. 25-sw-00808-TPO. However, in the Attachment B, Section I, the warrant erroneously requested information for the date range of **May 1, 2024 to June 1, 2024.** This warrant requests that Google provide information for the period of **May 1, 2024 to June 1, 2025**.

29.    On June 25, 2025, an indictment was filed charging the defendant with nine counts of 18 U.S.C. § 249(a)(2) and three counts of 18 U.S.C. § 844(h). This case is pending before the Honorable Senior Judge John L. Kane. 25-cr-001940-JLK.

## BACKGROUND CONCERNING GOOGLE[1]

30.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

31.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

32.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

33.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records

---

[1]     The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

indicating ownership and usage of the Google Account across services, described further after the description of services below.

34.     Gmail: Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

35.     Contacts: Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

36.     Calendar: Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar

can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device calendar so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them. Calendar can be accessed from the same browser window as other Google products like Gmail and Calendar.

37.     Messaging: Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention.  Google does not retain Duo voice calls, though it may retain video or voicemail messages.

38.     Google Drive and Keep: Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One.  In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive

in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them. Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them

39.     Photos: Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

40.     Maps: Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

41.     Location History: Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor

12

data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

42.     Google Pay: A subsidiary of Google, Google Payment Corporation, provides Google Accounts an online payment service called Google Pay (previously Google Wallet), which stores credit cards, bank accounts, and gift cards for users and allows them to send or receive payments for both online and brick-and-mortar purchases, including any purchases of Google services. Users may delete some data associated with Google Pay transactions from their profile, but Google Payment Corporation retains some records for regulatory purposes.

43.     Chrome and My Activity: Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing

history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity. My Activity also collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account, including voice queries made to the Google artificial intelligence-powered virtual assistant Google Assistant or commands made to Google Home products. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, ads clicked, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google Assistant and Google Home voice queries and commands may also be associated with the account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts in to automatic deletion of their location history every three or eighteen months. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

44.     Google Play: Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

45.     Google Voice: Google offers a service called Google Voice through which a
Google Account can be assigned a telephone number that can be used to make, record, and
forward phone calls and send, receive, store, and forward SMS and MMS messages from a web
browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are
stored indefinitely, unless the user deletes them.

46.     YouTube: Google also offers a video platform called YouTube that offers Google
Accounts the ability to upload videos and share them with others. Users can create a YouTube
channel where they can upload videos, leave comments, and create playlists available to the
public. Users can subscribe to the YouTube channels of others, search for videos, save favorite
videos, like videos, share videos with others, and save videos to watch later. More than one user
can share control of a YouTube channel. YouTube may keep track of a user's searches, likes,
comments, and change history to posted videos. YouTube also may keep limited records of the
IP addresses used to access particular videos posted on the service. Users can also opt into a
setting to track their YouTube Watch History. For accounts created before June 2020, YouTube
Watch History is stored indefinitely, unless the user manually deletes it or sets it to auto-delete
after three or eighteen months. For accounts  created after June 2020, YouTube Watch History is
stored for three years, unless the user manually deletes it or sets it to auto-delete after three or
eighteen months.

47.     Google integrates its various services to make it easier for Google Accounts to
access the full Google suite of services. For example, users accessing their Google Account
through their browser can toggle between Google Services via a toolbar displayed on the top of
most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat
conversations pop up within the same browser window as Gmail. Attachments in Gmail are

displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

48.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

49.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

50.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a

communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

51.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

52.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

53.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos and the data associated with the foregoing, such as geo-location, date and time may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the

account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

54.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

55.    Other information connected to the use of a Google account may lead to the discovery of additional evidence.  For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

56.    Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

57.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google LLC. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## ATTORNEY-CLIENT PRIVILEGED MATERIALS

58.     If the government becomes aware of a reasonable possibility that seized materials may include attorney-client privileged information, the government will implement filter protocols to safeguard attorney-client privileged materials and segregate those materials from review by any member of the investigative team.

//

//

//

//

//

//

//

//

//

//

//

//

//

19

## **CONCLUSION**

59.    Based on the forgoing, I request that the Court issue the proposed search warrant.

60.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Google.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*/s/ Jessica Krueger*
Jessica Krueger
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by reliable electronic means on June 27 , 2025

Timothy P. OHara
Digitally signed by Timothy P. OHara
Date: 2025.06.27 15:56:25 -06'00'

THE HON. TIMOTHY P. O'HARA
UNITED STATES MAGISTRATE JUDGE

**This affidavit and associated application were reviewed and are submitted by Assistant United States Attorney Melissa Hindman.**

20

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Google LLC ("Google"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

b.      such records were generated by Google's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                    Signature

21